UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| *IN RE EXTENDED STAY HOTEL ANTITRUST LITIGATION* | No. 24 CV 6324<br><br>Judge Georgia N. Alexakis |

MEMORANDUM OPINION AND ORDER

This matter is before the Court on the motion to transfer venue pursuant to 28 U.S.C. § 1404(a) by Defendants Integrated Decisions and Systems, Inc. ("IDeaS"), SAS Institute Inc., Hilton Domestic Operating Company Inc., Wyndham Hotels & Resorts, Inc., and Hyatt Corporation. [1] [89], [90]. These five Defendants assert the case should be transferred to the Northern District of California, where a nearly identical case against nearly identical Defendants was first filed. Plaintiffs assert the Illinois action is materially different from the California action and should continue in Illinois. [92]. For the reasons set forth below, the Court grants Defendants' motion to transfer venue.

---

[1] The five moving Defendants note that Defendants "Extended Stay America, Inc., and Sonesta International Hotels Corporation—who are also defendants in this Action—are not defendants in the California Actions. Accordingly, they are not joining this motion, but do not oppose the relief sought herein." [90] at 1 n.1. The Court also notes that, in the time since Defendants filed this motion [90] and Plaintiffs filed their response [92], Plaintiffs have amended and consolidated their complaint [93]. In analyzing the motion, the Court will refer to the consolidated amended complaint. [93].

I. **Legal Standards**

A district court may transfer any civil action to any other district where it might have been brought. 28 U.S.C. § 1404(a). Section 1404(a) "'permits a flexible and individualized analysis' and affords district courts the opportunity to look beyond a narrow or rigid set of considerations in their determinations." *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).

A district court generally considers three factors in evaluating a motion to transfer: whether "(1) venue is proper in both the transferor and transferee court; (2) transfer is for the convenience of the parties and witnesses; and (3) transfer is in the interest of justice." *Esposito v. Airbnb Action, LLC*, 538 F. Supp. 3d 844, 847 (N.D. Ill. 2020) (internal quotation marks omitted). The weight of each of these factors is left to the district court's discretion. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986).

As the parties seeking transfer, Defendants have "the burden of establishing, by reference to particular circumstances, that the transferee forum is clearly more convenient." *Id.* at 219–20.

II. **Background**

This is a purported nationwide class action brought under section 1 of the Sherman Act, 15 U.S.C. § 1, against five hoteliers and two software developers. [93]. The five hoteliers are Defendants Extended Stay America, Hilton, Hyatt, Sonesta,

2

and Wyndham. *Id.* n. 1. The two software developers are Defendant IDeaS and its parent company, Defendant SAS. *Id.*

In this consolidated action ("the Illinois action"), *see* [65], [93], Plaintiffs allege that the five hoteliers conspired with the two software developers to fix, raise, or stabilize the prices and supply of their extended stay hotel guest rooms, using the developers' pricing algorithm, G3 RMS. [93] ¶¶ 1, 2. Plaintiffs purport to represent a nationwide class of:

> All persons and entities in the United States and its territories who have directly purchased an extended stay hotel guest room for rent in any of the Relevant Markets from one or more Extended Stay Hotel Defendants or co-conspirators, or from any division, subsidiary, predecessor, agent, or affiliate of any Extended Stay Hotel Defendant or co-conspirators from no later than January 1, 2016, until Defendants' unlawful conduct and its anticompetitive effects stop.

*Id.* ¶ 836. Of the 18 named Plaintiffs, one allegedly resides in the Northern District of Illinois, one in the Eastern District of California, and one in the Central District of California. *Id.* ¶ 87; [92-1] at 1.[2] Of the seven Defendants, only Hyatt is headquartered in the Northern District of Illinois. [93] ¶ 146. The rest are headquartered or incorporated in Delaware, Maryland, Massachusetts, Minnesota, New Jersey, North Carolina, and Virginia. *Id.* ¶¶ 103, 106, 110, 118, 130, 139.

---

[2] The Court credits Plaintiffs' allegation that Plaintiff Suriano resides in Illinois. However, the complaint does not allege that Plaintiff Suriano lives in this District. [93] ¶ 87. Instead, in Plaintiffs' response to Defendants' motion to transfer venue, Plaintiffs attach a screenshot of what it purports to be to be Plaintiff Suriano's LinkedIn account. [92-1] at 1. The LinkedIn account seems to indicate that Surano works in Sugar Grove, Illinois. *Id.* However, Plaintiffs provide nothing further to support their allegation that the account belongs to Plaintiff Suriano, or that she both works *and* resides in the Northern District of Illinois. That said, for purposes of resolving this motion, the Court will assume that Plaintiff Suriano resides in the Northern District of Illinois, and that the two California plaintiffs likewise reside in the Eastern and Central Districts of California.

Earlier this year, a similar purported nationwide class action was filed and consolidated in the Northern District of California. [90] Ex. D. Like the Illinois action, the California action alleges that five hoteliers conspired to utilize Defendants IDeaS and SAS's G3 RMS pricing algorithm to "fix, raise, and stabilize hotel room prices," in violation of Section 1 of the Sherman Act. [90] Ex. D ¶¶ 1, 49. Defendants SAS, IDeaS, Wyndham, Hilton, and Hyatt are all defendants in the California action, along with Four Seasons Hotels Limited and Omni Hotels Management Corporation. [90] Ex. D. The California Plaintiffs purport to represent a nationwide class of:

> All persons and entities in the United States and its territories who have directly purchased an extended stay hotel guest room for rent in any of the Relevant Markets from one or more Extended Stay Hotel Defendants or co-conspirators, or from any division, subsidiary, predecessor, agent, or affiliate of any Extended Stay Hotel Defendant or co-conspirators from no later than January 1, 2016, until Defendants' unlawful conduct and its anticompetitive effects stop.

*Id.* ¶ 35. The California Defendants moved to dismiss that complaint. [90] Ex. E. As of December 12, 2024, the briefing on that motion to dismiss is complete, and oral argument is pending. [100] at 9.

### III. Analysis

#### A. Proper Venue

The parties do not dispute that venue would be proper in either district. [90] at 5; *see generally* [92] (not disputing proper venue).

#### B. Convenience of the Parties and Witnesses

In considering the convenience of the witnesses and parties, courts consider: "(1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease

4

of access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience to the parties of litigating in the respective forums." *Esposito*, 538 F. Supp. 3d at 847 (internal quotation marks omitted).

### 1. Plaintiffs' Choice of Forum

Courts in this District typically give less deference to plaintiffs' choice of forum when a case is brought as a nationwide class action, as here. *See, e.g., Georgouses v. NaTex Res., Inc.*, 963 F. Supp. 728, 730 (N.D. Ill. 1997) ("[B]ecause plaintiff alleges a class action, plaintiff's home forum is irrelevant."); *Jaramillo v. DineEquity, Inc.*, 664 F. Supp. 2d 908, 914 (N.D. Ill. 2009) (noting that the weight given to the plaintiff's choice of forum is "greatly discounted" in class actions, as "any venue selected is bound to be inconvenient to some plaintiffs"); *but see AL & PO Corp. v. Am. Healthcare Cap., Inc.,* No. 14 C 1905, 2015 WL 738694, at *3 (N.D. Ill. Feb. 19, 2015) (disagreeing and declining to discount plaintiffs' choice of forum in a class action).

Because this is a nationwide class action, and because only one of the 18 named Plaintiffs resides in Illinois, the Court gives Plaintiffs' choice of forum little weight.

### 2. Location of Material Events

For purposes of venue, the location of material events is the location where the defendant's decisions and other activities giving rise to the claim took place. *Rudy v. D.F. Stauffer Biscuit Co.*, 666 F. Supp. 3d 706, 716 (N.D. Ill. 2023). Where a corporate defendant's conduct is at issue, courts look to where the underlying business decisions were made. *Id.*

5

Here, Plaintiffs allege a conspiracy with national impact, across at least 19 different geographic markets. [93] ¶ 169. As Plaintiffs point out, Hyatt—one of defendant hoteliers—is headquartered in the Northern District of Illinois. *Id.* ¶ 146. It follows that at least some, if not all, of Hyatt's business decisions were likely made within this District. But this fact alone is not "dispositive," as Plaintiffs claim, and is instead part of a larger analysis. [92] at 8. The rest of the Defendants are headquartered or incorporated in Delaware, Maryland, Massachusetts, Minnesota, New Jersey, North Carolina, and Virginia. [93] ¶¶ 103, 106, 110, 118, 130, 139. The geographic spread of corporate headquarters suggests that the Northern District of Illinois is one of many possible locations of the material events.

Plaintiffs also point out that one of their named representatives rented hotel rooms within this District from Defendants. [92] at 5. However, in a class action alleging violation of a federal statute, it is the location of Defendants' corporate decisionmakers that matters—not the location of plaintiffs' injury. *Rosen v. Spirit Airlines, Inc.*, 152 F. Supp. 3d 1055, 1060 (N.D. Ill. 2015) ("[T]he material events are not where customers made their purchases—a similar factual pattern that may have repeated itself across airports nationwide, in light of the multiple pending class actions."); *accord Jaramillo*, 664 F. Supp. 2d at 914.

And even if the Court took one plaintiff's conduct into account (i.e., that she booked her rooms, paid for those rooms, and was otherwise harmed by Defendants in this District, *see* [92] at 5), it would also have to consider comparable conduct that Plaintiffs allege occurred in the "San Francisco-Oakland-Fremont, California"

6

Metropolitan Statistical Areas, which sit in the Northern District of California. [93] at ¶ 169 (alleging four relevant Metropolitan Statistical Areas in California, one of which is within the Northern District of California).

Because there is no one or key location of material events in this case, this factor does not weigh in the Court's determination of venue.

### 3. Ease of Access to Sources of Proof

This factor is much less important than it used to be, given our "era of electronic documents, easy copying and overnight shipping." *Campbell v. Campbell*, 262 F. Supp. 3d 701, 710 (N.D. Ill. 2017). Somewhat perplexingly, Plaintiffs argue that discovery would be substantially easier in Illinois, while also acknowledging that Defendants "may collect, review, and cull relevant documents once and produce them to Plaintiffs in both actions with the click of a button." [92] at 9, 13.

The Court is inclined to agree with Plaintiffs' latter statement: Given the availability of e-discovery and geographic spread of Plaintiffs and Defendants, the ease of access to sources of proof is a neutral factor.

### 4. Convenience of Witnesses

The convenience of witnesses is often viewed as the most important factor to consider in transferring venue. *Rose v. Franchetti,* 713 F. Supp. 1203, 1214 (N.D. Ill. 1989). The convenience of nonparty witnesses is more important than the convenience of party witnesses. *Craik v. Boeing Co.,* 37 F. Supp. 3d 954, 961 (N.D. Ill. 2013).

First, for the party witnesses: Defendants (or at least those requesting transfer) contend that transfer to the Northern District of California would be more convenient for them, given the ongoing parallel action in that Court. [90] at 8. Plaintiffs contend that Chicago's central location best accommodates the dispersed pool of witnesses and parties. [92] at 10 ("[T]his District is more convenient than the Northern District of California, because each is headquartered closer to Illinois than California."). But proximity to any given District is not a particularly weighty consideration. *See Hirst v. SkyWest, Inc.*, 405 F. Supp. 3d 771, 778-79 (N.D. Ill. 2019) (discounting significance of flight time differences for witnesses). In fact, because the class of putative plaintiffs are nationwide customers of Defendants' extended stay hotels, there is no location that is obviously more or less convenient for Plaintiffs. *See Jaramillo*, 664 F. Supp. 2d at 915.

Next, to the nonparty witnesses: Nonparty witnesses in this action include Defendants' employees who would not testify as Rule 30(b)(6) witnesses. *Id*. Defendants contend that "it is a near certainty that many of Defendants' prospective witnesses will be the same in both [the Illinois and California a]ctions." [100] at 6. Given the duplicative nature of these proceedings with the California action, and the likely overlapping witness list, the Court could certainly imagine the inconvenience nonparty witnesses would experience if forced to appear nearly simultaneously in two substantially similar actions, halfway across the country from each other. This factor weighs in favor of transfer.

### 5. Convenience of Parties

The moving party—here, Defendants—have the burden of showing that the original forum is inconvenient for them and that the alternative forum does not significantly inconvenience the plaintiffs. *Rudy*, 666 F. Supp. 3d at 717. But again, because this is a class action, Plaintiffs' convenience is accorded less weight, as replacement Plaintiffs are likely available in any locale should the burdens of representation prove unbearable for any currently named Plaintiff. *See Dale v. Deutsche Telekom AG,* 2022 WL 6123365, at *5 (N.D. Ill. Oct. 7, 2022) (quoting *Simonoff v. Kaplan, Inc.*, 2010 WL 1195855, at *2 (N.D. Ill. Mar. 17, 2020) ("Should litigating this case in the Southern District of New York prove too inconvenient for the named Plaintiff, then another named plaintiff can be substituted for her.")). Even considering Plaintiffs' convenience, though, the Court notes that only one of the named Plaintiffs lives in Illinois, while two live in California. [92] at 2.

Plaintiffs cite *Ashley Furniture Industries, Inc. v. Packaging Corporation of America* for the contention that "the mere pendency of a similar action pending elsewhere does not justify a transfer[.]" [92] at 10-11 (citing 275 F. Supp. 3d 957, 967 (W.D. Wis. 2017)). However, in *Ashley Furniture*, the plaintiff plausibly asserted that because its employees and witnesses were "mostly" located in Northern Wisconsin, the Western District of Wisconsin would be more convenient than transferring venue to Illinois. *Id.* Such is not the case here, where only one defendant and one plaintiff in a purported nationwide class action are located in Illinois.

9

There is an overwhelming factor that suggests transfer is warranted for the convenience of *both* parties: the ongoing California action. As discussed *infra, see* Part C.4, the California action will involve many of the same parties, witnesses, and legal arguments, and is months ahead of the Illinois action. Defendants thus have met their burden by pointing to the inconvenience of litigating the California action while litigating the substantially similar Illinois action. *See* [90] at 9. This factor, too, weighs in favor of transfer.

## C. Interests of Justice

This factor concerns the conservation of judicial resources and the efficient administration of the court system. *Research Automation*, 626 F.3d at 978. The transferor district compares itself and the transferee district on a variety of factors, including "docket congestion and likely speed to trial," "each court's relative familiarity with the relevant law," and "the relationship of each community to the controversy." *Id*. As part of this segment of the analysis, the transferor court also considers the judiciary's interest in trying related litigation together. *See Coffey,* 796 F.2d at 221. These factors "may be determinative in a particular case, even if the convenience of the parties and witnesses might call for a different result." *Coffey,* 796 F.2d at 220 (citations omitted).

### 1. Time to trial

To evaluate the speed at which a case might proceed, district courts compare two statistics for the transferor and transferee districts: (1) the median number of months from filing to disposition for civil cases, and the (2) the median number of months from filing to trial for civil cases. *Campbell*, 262 F. Supp. 3d at 711. As Plaintiffs note, the median number of months from filing to disposition is the more important figure in complex class actions such as this one, as those cases "rarely make it to trial and are typically disposed of through initial pleadings, settlement after class certification, or summary judgment." [92] at 15 (quoting *Kim v. Jump Trading, LLC*, 2024 WL 2863331, at *6 (N.D. Ill. June 6, 2024)).

To assess these statistics, the Court relies on the United States District Courts National Judicial Caseload Profile.[3] In the Northern District of Illinois, as of September 2024, a civil case takes an average of 6.8 months from filing to disposition, and 58.6 months from filing to trial. *Id.* at 47. In the Northern District of California, also as of September 2024, a civil takes case an average of 20.6[4] months from filing to disposition, and 47.9 months from filing to trial. *Id.* at 66.

These statistics would suggest that a complex class action would move faster through the Northern District of Illinois than the Northern District of California. But in this case, there is a third, overriding consideration: The California action is further

---

[3] *See* https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0930.2024.pdf
[4] This figure appears to be anomalous, as the same metric was 7.6 months as of March 2024 and June 2024. *See* United States District Courts National Judicial Caseload Profile, https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630_2024.pdf *and* https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630_2024.pdf.

11

ahead in litigation than the Illinois action. The transferee district is already more familiar with the allegations, facts, and legal disputes via motions and oral argument, and is poised to resolve a fully briefed outstanding motion to dismiss. The Illinois action, if transferred to the Northern District of California, would likely benefit from the Court's steps-ahead familiarity with the facts, law, and allegations involved. This factor, too, weighs in favor of transfer.

### 2. Each Courts' Familiarity with the Relevant Law

This action concerns federal antitrust law. All district courts are presumed to be equally capable of interpreting and applying federal law. *Lewis v. Grote Indus., Inc.,* 841 F. Supp. 2d 1049, 1055 (N.D. Ill. 2012). This factor is therefore neutral.

### 3. Relationship of Each Community to the Controversy

This factor is usually critical in answering transfer-of-venue questions. However, in this case, "because the putative class is national in scope, there is no compelling community interest that would be preserved by the selection of one venue over another." *Jaramillo,* 664 F. Supp. 2d at 917. This factor is again neutral.

### 4. Trying Related Litigation Together

"[T]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." *Ferens v. John Deere Co.,* 494 U.S. 516, 531 (1990). Where there are two such parallel cases in two separate courts, "it would be inefficient for two Courts to invest the time learning the facts common" and applying those facts to the same body of law. *Rosen,* 152 F. Supp. 3d at

1065. For example, allowing discovery and motion practice on the same issues to proceed in two different district courts would mean the duplicative production of documents and witnesses and the briefing of near identical issues before different judges. Additionally, if any party decides to appeal a decision, two different circuit courts would be required to decide the same issue for the same litigants. Instead, in the interest of judicial economy, "[t]hat effort could be made just once by one Court." *Id.*

Plaintiffs point out that courts in this District have observed that "the benefit of having two similar class actions proceed in the same district may not be strong enough to warrant transfer where the defendant is not located in the transferee district." [92] at 13 (quoting *Rosen,* 152 F. Supp. 3d at 1064). However, as noted in *Rosen,* even in that scenario, there are still some strong benefits to transferring. Allowing two substantially similar cases to proceed in the same district would allow that court "to coordinate or consolidate the cases to the extent it deems appropriate to shepherd them to an efficient resolution." *Rosen,* 152 F. Supp. 3d at 1064. "[D]enying the motion [to transfer] forecloses the[se efficiencies] and further creates the prospect of inconsistent rulings on discovery and dispositive motions." *Id.*

A court must consider the substance of a claim when determining whether a claim is duplicative and, therefore, a more suitable candidate for transfer. *Ridge Gold Standard Liquors, Inc. v. Joseph E. Seagram & Sons, Inc.*, 572 F. Supp. 1210, 1214 (N.D. Ill. 1983). Where underlying facts, witnesses, documents, evidence and legal

13

analysis overlap, the interests of justice are best served by granting transfer. Here, the Court considers overlap as follows:

***The parties.*** Defendants overlap, for the most part, in the California and Illinois actions. Two defendants are different in each case: Extended Stay America and Sonesta are defendants in the instant action, while Four Seasons Hotels and Omni Hotels & Resorts are defendants in the California action. [92] at 1.

The classes of Plaintiffs also overlap: The Illinois action includes "[a]ll persons … who have directly purchased an extended stay hotel guest room for rent in any of the Relevant Markets from one or more Extended Stay Hotel Defendants," from January 1, 2016 "until Defendants' unlawful conduct and its anticompetitive effects stop." [93] ¶ 863. The California action includes "[a]ll persons … who rented Operator Defendants' hotel guest rooms in the Relevant Sub-markets" from April 26, 2020, "until the Defendants' unlawful conduct and its anticompetitive effects cease to persist." [90] Ex. D, ¶ 35.

Plaintiffs concede that the alleged antitrust violations in these actions "overlap at a high level." *Id.* at 12. But they attempt to differentiate the actions through the defendants. Plaintiffs explain that the Illinois action focuses only on extended stay hotels, while the California action focuses on both extended stay *and* regular hotels. [92] at 1, 3, 12. According to Plaintiffs, this distinction provides three vital differences between the cases: (1) "Extended Stay America, Sonesta, and Hilton[5] were charter members of the G3 RMS pilot program"; (2) "the Hotel Defendants [in the Illinois

---

[5] Hilton is a defendant in both the Illinois and California actions. [90] Ex. D; [93].

14

action] have a significant presence in the extended stay hotel market"; and (3) "extended stay hotels' revenues and profits were comparatively higher than the overall hotel market during the relevant period." [92] at 12. Yet Plaintiffs do not explain *how* these three factors alter the fundamental similarities between the two actions. The fact that, as in (1), some of the Defendants began using the pricing algorithm sooner than the rest of the Defendants, or that, as in (2) and (3), the Illinois Defendants are a subset of the California Defendants, does not render the Illinois action fundamentally different from the California one. The Court does not find this attempt to differentiate the actions persuasive.

*The conspiracy alleged.* Both complaints allege that the hotelier defendants, together with the software developer defendants, conspired to fix, raise, or stabilize the prices of hotel room rentals, in violation of Section 1 of the Sherman Act. *Compare* [90] Ex. D., ¶¶ 1–2, *with* [93] ¶¶ 1–2.

*The means of the alleged conspiracy.* Both complaints allege that the hotelier defendants effectuated this conspiracy through their use of the software developer defendants' pricing algorithm, the G3 RMS. *Compare* [90] Ex. D., ¶¶ 1–2, 49, *with* [93] ¶¶ 1–2. Both complaints allege that the hotelier defendants provided the software developer defendants with their non-public pricing and occupancy data and knew that their fellow hotelier defendants were doing the same. *Compare* [90] Ex. D., ¶¶ 2–3, 49, *with* [93] ¶¶ 2–3.

*The geographic reach of the alleged conspiracy.* Both complaints allege that the conspiracy raised room rates and suppressed occupancy levels nationally, as

well as in certain relevant sub-markets. *Compare* [90] Ex. D., ¶ 1 n.1, *with* [93] ¶¶ 169, 689, 690. At least nine of the relevant sub-markets are the same between the two complaints. *Compare* [90] Ex. D., ¶ 1 n.1 (listing 17 relevant sub-markets), *with* [93] ¶¶ 169 (listing "at least" 19 relevant sub-markets).

The two actions allege similar conduct under the same legal claim. They pose overlapping questions of fact and liability that are best analyzed in the same judicial district, if not by the same Court. In the interests of justice, as well as for the convenience of the parties and witnesses, the Illinois action must be transferred to the Northern District of California.

## IV.   Conclusion

For the reasons explained above, Defendants' motion to transfer venue to the Northern District of California is granted. [89]. The Clerk is directed to transfer this action to the Northern District of California forthwith.

_____
Georgia N. Alexakis
United States District Judge

Date: December 12, 2024