UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE EXTENDED STAY HOTEL ANTITRUST LITIGATION

This document applies to all actions.

Case No. 24-cv-09060-JSW

**ORDER DENYING SAS INSTITUTE INC.'S SEPARATE MOTION TO DISMISS**

Re: Dkt. No. 229

Now before the Court for consideration is the motion to dismiss filed by SAS Institute, Inc. ("SAS"). The Court has considered the parties' papers, relevant legal authority, and the record in this case, and the Court HEREBY DENIES SAS' motion.[1]

**BACKGROUND**

Plaintiffs, on behalf of themselves and a putative class, allege the defendants in this case, including SAS, conspired to fix prices in the extended stay hotel guestroom rental market by "using the same pricing algorithm product, called the G3 RMS, to set guest room rates and occupancy levels at their respective extended stay hotels." (Dkt. No. 93, Consolidated Amended Class Action Complaint ("FAC") ¶ 2.) Plaintiffs also allege that the G3 RMS product was created, marketed, and sold by IDeaS in collaboration with SAS. (*Id.* ¶¶ 105, 109.)

According to Plaintiffs, "SAS and IDeaS have collaborated closely in developing, upgrading, and marketing" G3 RMS. (*Id.* ¶ 109.) For example, Plaintiffs allege that an SAS employee stated that "SAS and IDeaS are working on a technology solution to help hotel clients achieve the goal of property-wide profit optimization[.]" (*Id.* ¶ 276 (cleaned up).) In addition, the

[1] Defendants, including SAS, filed a joint motion to dismiss on the merits of Plaintiffs' claims. The Court will address that motion in a separate Order.

G3 RMS product brochure describes that the product transforms the "right data through SAS High Performance Analytics into automated pricing decisions [clients] can take to the bank." (*Id.* ¶ 283 (cleaned up).) The brochure also includes a statement that "SAS High Performance Analytics incorporate multiple hotel and market data sources to accurately learn, adapt and forecast guest and market demand patterns." (*Id.* ¶ 284; *see also id.* ¶ 289 (noting product applies SAS-powered artificial intelligence and predictive analytics to" data provided by clients "to generate pricing 'decisions').)

Plaintiffs assert three violations of the Sherman Act. First, they allege a hub-and-spoke conspiracy between IDeaS and SAS (the "Pricing Algorithm Defendants") and five hotel companies (the "Hotel Defendants") to fix prices in the extended-stay hotel room rental market ("Count 1"). Second, they allege unlawful price sharing ("Count 2"). Third, they allege Defendants used vertical agreements to align pricing ("Count 3").

The Court will address additional facts as necessary in the analysis.

## ANALYSIS

On a Rule 12(b)(6) motion, the Court assumes "that all the allegations in the complaint are true[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff's obligation to provide the "grounds" of their "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.] … Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Id.* "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

Section 1 of the Sherman Act prohibits any "contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States." 15 U.S.C. § 1. To state a claim, Plaintiffs must allege facts that show (1) a contract, combination or conspiracy among two or more persons or distinct business entities; (2) by which the persons or entities intended to harm or restrain trade or commerce among the several States, … (3) which actually injures competition." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008). Pursuant

to *Twombly*, a plaintiff must include "enough factual matter (taken as true) to suggest that an agreement was made. Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage," but allegations "of parallel conduct and a bare assertion of conspiracy will not suffice." *Twombly*, 550 U.S. at 556. "Hence, when allegations of parallel conduct are set out in order to make a [Section] 1 claim, they must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action." *Id.* at 557.

SAS argues that Plaintiffs fail to allege sufficient facts to show its involvement in the alleged conspiracy. The Court granted a similar motion in the related case, *Dai v. SAS Institute, Inc.*, No. 24-cv-2537-JSW, Dkt. No. 129 ("*Dai* SAS Order"). In *Dai*, the Court reasoned that Plaintiffs alleged no more than SAS "provide[d] one aspect of the RMS product and [did] not suggest it has continued involvement with providing the Hotel Defendants the RMS products. Plaintiffs also [did] not include allegations from which one could reasonably infer SAS had any other connection or contact with the Hotel Defendants." *Dai* SAS Order at 2:28-3:4.

Like the Plaintiffs in *Dai*, Plaintiffs here allege the G3 RMS product was "powered by" SAS analytics. (*See, e.g.,* FAC ¶¶ 275, 284, 450.) Unlike the Plaintiffs in *Dai*, Plaintiffs also cite a press release that discusses a "development partnership between Hilton Worldwide, IDeaS, and IDeaS' parent company, SAS," which was described as "critical to the success of the G3 RMS" product. (*Id.* ¶ 437.) Plaintiffs also allege that IDeaS enabled the exchange of sensitive commercial information among the Hotel Defendants with "the technical assistance and support of SAS." (*Id.* ¶ 826.)

In addition, Plaintiffs include allegations that SAS employees made statements about their joint work with IDeaS. For example, in 2009, an SAS employee described joint work "on a technology solution to help hotel clients achieve the goal of profit-wide optimization" and spoke of SAS' excitement about those "joint offerings." (*Id.* ¶ 276.) Similarly, IDeaS and Hilton issued a press release regarding a pilot program to use the RMS product. In that press release, one of SAS' vice-presidents of advanced analytics research and development discussed SAS' "collaboration with IDeaS on G3 RMS [that] takes the science of revenue management to new

heights within hospitality and serves as a sign to the industry of exciting innovations to come from IDeaS and SAS." (*Id.* ¶ 438.) Plaintiffs also allege that SAS issues badges to individuals who have become certified users of the G3 RMS product. (*Id.* ¶¶ 505-506; *see also id.* ¶ 507 (noting hotel manager who obtained certified user status posting about her "verified achievement from SAS" on LinkedIn page in 2023).)

These allegations provide more detail about SAS' alleged involvement than the allegations did in *Dai*. Accordingly, the Court concludes the allegations here are distinguishable from the allegations in *Dai.* The Court DENIES SAS' separate motion, and it will analyze whether the allegations are sufficient to state a claim in its Order on the joint motion to dismiss.

**IT IS SO ORDERED**.

Dated: September 15, 2026

JEFFREY S. WHITE
United States District Judge